# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0309
Filed April 15, 2026

————————————

**In the Interest of A.C., Minor Child,**

**J.S., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Wapello County,
The Honorable Richelle Mahaffey, Judge.

————————————

**AFFIRMED**

————————————

Sarah Wenke, Ottumwa, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Denise McKelvie Gonyea of McKelvie Law Office, Grinnell, guardian ad
litem for minor child.

Katie Mitchell of Mitchell Law Office, PLC, Washington,
attorney for minor child.

Julie DeVries of DeVries Law Office, PLC, Centerville,
attorney for intervenor B.A.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her daughter, [1] born in 2015, challenging the sufficiency of the evidence supporting the grounds for termination and claiming that permissive exceptions should preclude termination. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

The mother and her daughter, A.C., came to the attention of the Iowa Department of Health and Human Services in June 2024, upon reports that the mother and her fiancé were using methamphetamine while caring for the child. Also around this time, the mother was involved in two separate traffic stops—during which she was found in possession of methamphetamine, a methamphetamine pipe, and other illegal substances—which led to various criminal charges. [2] The mother reasoned that when she used methamphetamine, she left the child with a nanny so the child had a sober caregiver. [3] However, the department learned that the child was able to describe the physical appearance of illegal substances and paraphernalia, could identify behavioral changes in the mother related to her active substance use, and recalled times she was left alone without a caregiver. A safety plan was established placing A.C. with a relative.

In August, the court entered a removal order continuing the child's care with the relative placement. The child was adjudicated in need of

---

[1] The child's father is deceased.

[2] The mother's fiancé has a criminal record that includes substance-related convictions. He completed a substance-use evaluation that recommended no treatment.

[3] The nanny had her own parental rights to her children terminated, a fact the mother knew when she hired her.

assistance. In October, the court entered a dispositional order that reaffirmed the child's adjudication and removal. The mother appealed, and this court affirmed the court's order. *In re A.C.*, No. 24-1689, 2025 WL 52844, at *2–4 (Iowa Ct. App. Jan. 9, 2025) (concurring with the district court's concerns about the mother's commitment to sobriety, noting her belief she could use substances recreationally without becoming addicted, her refusal to submit to patch tests even though her alleged "adhesive allergy ha[d] never been medically diagnosed," and her "latest urine analysis was rejected as unreliable.").

The district court entered a dispositional review order in February 2025, noting in part:

> [The mother] continues to lack insight into the initial reasons for HHS involvement, and her need to meaningfully participate in services. [The mother] needs to take accountability and demonstrate her sobriety by providing drug screens for HHS when requested. [The mother] is quick to obfuscate, deny needing services, and to point a finger back at the professionals trying to help her. In juvenile court, these are often the hallmarks of a parent trying to hide their illegal substance use.

> The court believes that [the mother] is capable of addressing her mental health and substance use, and having [A.C.] returned to her care. [The mother] will need to demonstrate honesty, cooperation, and progress in services in order to accomplish this.

The mother continued to deny substance use. But she participated in services, albeit inconsistently. The guardian ad litem noted, "[The mother] is in that sphere of denial but is doing some things that are requested. This is frustrating for everyone because permanency is looming." In its April order, the court stated in part:

> Unfortunately, [the mother] continues to deny any use, question her previous positive test results, and has not provided drug screens for HHS on multiple occasions. Her paramour has also failed on multiple

occasions to appear for drug screens at the request of HHS. [The mother] claims her schedule is a barrier to getting to testing, however, on one occasion during the last reporting period, HHS observed [the mother] to lie about her location—she said she could not test because she was out of town, but HHS observed [the mother]'s vehicle to be in her driveway. [The mother]'s participation in substance abuse treatment has improved, but is still not consistent.

Safety concerns about the mother persisted. Although she remained enrolled in services, her participation was inconsistent. The department caseworker reported that "[u]nfortunately, [the mother] has remained in [a] state of denial and blaming others throughout the life of the case." In short, the caseworker opined that "very little progress has been made throughout the life of the case."

The State petitioned to terminate parental rights, and the termination hearing took place over two days in December.[4] The mother continued to deny substance use, maintaining that she had been sober for ten years except for a relapse in June 2024. Yet, the mother failed to participate in twenty drug tests requested by the department. The department caseworker explained in detail the mother's failure to cooperate with drug tests. The mother attended three tests, two of which were positive for methamphetamine. Indeed, the mother withdrew from outpatient substance-use treatment in June 2025, after the provider confronted the mother about her positive hair tests and stated the mother needed to be honest in order for the provider to help her. The mother then sought treatment from a telehealth provider. However, the department expressed concern about the "accuracy and randomness" of the

---

[4] Meanwhile, in July, A.C.'s maternal great grandmother filed an uncontested motion to intervene, which the court granted. Although the mother requested a guardianship be established with the intervenor in the event the child could not be returned to her custody, the mother takes no issue related to the intervenor on appeal.

telehealth provider's urine-analysis tests because the mother completed the tests by providing samples on her own at home, on a planned schedule, using instant tests that were not confirmed in a laboratory.

The department had accommodated the mother's requests for testing at different locations, which the mother ultimately failed to cooperate with for various reasons. After the mother challenged a test by paying for her own confirmation test, the department attempted to conduct its own testing so the mother would not have to pay. But the mother failed to participate. In other situations, the mother represented to treatment providers that she was taking drug tests for the department to avoid taking tests for the providers. Most recently, the mother maintained she would not participate in testing because she did not approve of the testing laboratory. The department also found it "extremely concerning" that the mother requested a particular type of prescribed medication, recalling that the mother "said that it would basically make it to where she wouldn't be—have issues passing her drug tests anymore because that medication would cause her to test positive for methamphetamine as well."

Ultimately, the caseworker opined there had been no progress toward reunification, explaining:

> She has been enrolled in services. The concern comes in about how beneficial these services have been to actually helping her substance use and the consistency in which she's participating in the services. Same thing goes with the mental health services. There were several appointments that she would miss with her psychiatrist as well, and her psychiatrist ultimately kind of dropped her from the services also. And so she's not currently taking any medication, not involved in any therapy, and at this time, not participating in substance use services either or drug testing.

6

The mother had not progressed beyond fully supervised visits. Meanwhile, in May 2025, the child changed placements and began living with fictive kin, where she has remained. The child was thriving in their home, and they were willing and able to adopt her. Although the child expressed a preference that a guardianship be entered with the fictive kin rather than termination due to the lack of progress toward reunification, the department recommended termination. In particular, the caseworker felt a guardianship was not an appropriate option in this case because the mother continued to provide the child with "very misleading information" and the mother was likely to disrupt or challenge the guardianship. The caseworker explained, "I feel that with the lack of accountability, [the mother] would most likely try to get the guardianship reversed very quickly, which would continue to prolong that trauma to [the child]." The guardian ad litem concurred, opining:

> It was the mother in this case deflecting responsibility, giving reasons why the test didn't work and why this couldn't happen and that couldn't happen, and that was really unfortunate and kind of disappointing.

> As far as [the child]'s clear and connected bond with her mom, I think it's really important for us to look at how healthy that bond is. It's certainly strong, and it's certainly based in love, but we've got to look at how healthy it is.

> You know, we've seen ten-year-olds who have the ability to take care of a baby on their own; right? But that doesn't mean that they should be doing that. And I think that's kind of where we are in this situation. [A.C.]'s protective of mom, emotionally supportive of mom. Financially, through her survivor benefits, provides some income to the family.

> I think that, at the end of the day, it's going to be in [the child]'s best interest for the parental rights to be terminated in this case and for the Court to grant the State's petition so that [she] can be adopted. And for the reasons that I just describe[d] as far as the healthiness of the bond, that guardianship is not going to be appropriate in this case.

> And that, as you know, [A.C.] does want to be remain[] with [the fictive kin], and I do think that that is in her best interest.

After the termination hearing, the State moved to reopen the record, and the court received additional evidence and testimony in January 2026. The court learned that the mother and her fiancé were arrested upon leaving a supervised visit with the child on Christmas day.[5] The mother was charged with possession of methamphetamine and methamphetamine paraphernalia.[6] According to the mother, "I was told that there was a straw with meth in it found in my purse," but "[t]here was absolutely no paraphernalia or methamphetamine in my purse." The mother also maintained that the State patrol officer "planted evidence" in her vehicle, including a broken glass methamphetamine pipe with methamphetamine in it, stating that was the only "plausible explanation" for how it got there. She further testified "[t]he drug dog hit on the Christmas food."

The court entered an order terminating the mother's parental rights under Iowa Code section 232.116(1)(e), (f), and (*l*) (2025). The mother appeals.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025). In our review, we give weight to the district court's "factfinding and credibility determinations." *Id.* Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

---

[5] The mother acknowledged that she arrived at the visit "[a]bout an hour and a half" late.

[6] The fiancé was also charged with related offenses.

## ANALYSIS

We review this case using a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we determine whether a ground for termination under Iowa Code section 232.116(1) is established. *Id.* Second, if a ground for termination is established, we apply the best-interest framework under Iowa Code section 232.116(2). *Id.* Third, if the best-interest framework supports termination, we consider whether any permissive exceptions to termination under Iowa Code section 232.116(3) apply. *Id.* "We do not address any steps not raised by a parent." *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc).

## I. Statutory Grounds for Termination

The district court terminated the mother's parental rights on three statutory grounds, but we may affirm if one ground is supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(f). The mother concedes the first three elements were established, so we focus on her challenge to the court's finding on the fourth element. *See* Iowa Code § 232.116(1)(f)(4) (requiring the State to show by clear and convincing evidence that the child could not be returned safely to the custody of either parent at the time of the termination hearing).

The mother claims that "A.C. could have safely returned to [her] care." We have detailed the mother's history of substance use, failure to follow through with treatment, lack of accountability, and relationship with a known substance user. Although the mother has shown signs of engagement and participation in services, she made no meaningful progress during the life of this case. Instead, she made excuses. As the caseworker summarized,

> there has been little to no cooperation with the Department as far as drug testing goes. She has not submitted a negative drug test for the Department

aside from the one UA that took place in February of 2025. There are huge concerns of every area; mental health, substance use, drug testing, honesty, and just willingness to change.

Even after the termination hearing, the mother was arrested with illegal substances and paraphernalia in her possession, which she denied. We concur with the department's concerns that the mother has not yet faced her substance-use issues, let alone resolved them. Her actions create no assurance that she could safely parent this child. Clear and convincing evidence supports the conclusion that the child could not be returned to the mother's custody at the time of the termination hearing.

## II. Statutory Exceptions to Termination

The mother maintains that two permissive exceptions, Iowa Code section 232.116(3)(b) and (c), should apply to preclude termination of her parental rights. Section 232.116(3)(b) provides that the court need not terminate parental rights if "[t]he child is over ten years of age and objects to termination." A.C., age ten at the time of the termination hearing, objected to the termination of her mother's parental rights. She also voiced her preference on who she would live with if a guardianship were entered. We acknowledge how painful and confusing this proceeding is for the child, who very clearly loves her mother. But at the same time, the child should not be called upon to self-protect and navigate the mother's chaotic lifestyle and the mother's failure to take accountability for the harm her actions cause to the child. The mother acknowledges that A.C. is integrated and doing well in the home of the fictive kin, and we will not upset that stability and permanency the fictive kin is providing for her. We decline to apply this exception.

Likewise, we decline to apply the section 232.116(3)(c) exception based on the closeness of the parent-child relationship. The exception applies when

"[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). As noted, there is no question the mother and child are bonded. But that bond is not enough to offset the child's current stability in contrast to the risks she is exposed to in the mother's custody. Indeed, the defining elements of a child's best-interests determination are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). The record fails to show that the termination would be detrimental to the child.

We affirm termination of the mother's parental rights.

**AFFIRMED.**